669 A.2d 326

**David Allen OCCHIBONE, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 19, 1995.

Decided Dec. 28, 1995.

Phillip L. Clark, Jr., for D. Occhibone.

Timothy P. Wile, Chester J. Karas, Jr., Harold H. Cramer, for Penndot.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## *OPINION*

MONTEMURO, Justice.

Appellant, David Allen Occhibone, appeals from an order of the Commonwealth Court which affirmed the order of the Court of Common Pleas of Lawrence County dismissing Appellant's statutory appeal. This case raises a question of first impression, whether a motorist charged with a violation of the Implied Consent Law must receive the request to submit to chemical testing from a police officer.

On September 20, 1992 at approximately 2:10 a.m., Appellant was driving north on Route 18, a four lane undivided highway. Pennsylvania State Troopers Moore and Hov, observing that Appellant's front and rear left tires were in the left lane while the rest of his car was in the right lane, stopped his vehicle.

Trooper Moore approached Appellant, while Trooper Hov confronted the male occupant in the front passenger seat. Moore observed that Appellant's eyes were glassy and bloodshot, and noticed a strong odor of alcoholic beverages emanating from the vehicle. Appellant staggered when emerging from his car, and failed all of the field sobriety tests which Trooper Moore administered.

Appellant was placed under arrest for driving under the influence of alcohol or a controlled substance, a violation of 75 Pa.C.S. § 3731. He was handcuffed, placed in a patrol vehicle, and advised by Trooper Moore that he would be transported to St. Francis Hospital for a blood test. Moore did not read *Miranda* warnings to Appellant.[1]

After arriving at the hospital, Trooper Moore read the implied consent warning, which consisted of a verbatim recitation of the relevant language of Section 1547 of the Vehicle Code,[2] and Appellant indicated that he understood the warn-

---

**1.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** 75 Pa.C.S. § 1547 reads in relevant part:

(a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

(b) **Suspension for refusal.**—

ing. At this point, a lab technician entered the room, and in Trooper Moore's presence asked Appellant to submit to a blood test. Appellant declined, giving no reason for his refusal.

On October 23, 1992, a notice of suspension was sent to Appellant, who filed an appeal of the suspension with the trial court. After a *de novo* hearing, the court issued an order and opinion dismissing the appeal. Appellant then appealed to the Commonwealth Court. In an *en banc* decision, the Commonwealth Court affirmed the trial court's order, and directed that the one year suspension of Appellant's driving privilege be reinstated. The Commonwealth Court held that:

> Where a police officer has informed the licensee of the Implied Consent Law, a person authorized to take a sample of the licensee's breath, blood or urine may request that the licensee submit to chemical testing *if the request is made in the presence of a police officer.*

*Occhibone v. Commonwealth, Department of Transportation,* 165 Pa.Commw. 268, 277, 645 A.2d 327, 331 (1994).

Pursuant to 75 Pa.C.S. § 1547(a), every motorist who operates a motor vehicle in Pennsylvania is deemed to have given his or her consent to the submission of a chemical test of that person's breath, blood or urine. Under 75 Pa.C.S. § 1547(b)(1), the motorist has a statutory right to refuse to submit to a requested chemical test. However, if the motorist refuses to submit to the chemical test, his or her operating privileges will be suspended for twelve months.

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

75 Pa.C.S. § 1547(a), (b).

Section 1547 does not specify who must request that the motorist submit to chemical testing. Appellant asserts that only a police officer may make the chemical testing request. Since the act does not specify the source of the request, the rules of statutory construction must be applied to ascertain the legislature's intent. Section 1921(c) of the Statutory Construction Act, 1 Pa.C.S. § 1921(c) provides:

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

When applying the considerations of the Statutory Construction Act to the Implied Consent Law, it is apparent that the legislature's intent is best served by allowing an individual other than a police officer to make a chemical testing request. The object of the Implied Consent Statute is to reduce the number of motorists driving under the influence,[3] as the Commonwealth has a compelling interest in protecting its citizens from the dangers posed by drunk drivers. *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979); *Commonwealth v. Kohl*, 532 Pa. 152, 615 A.2d 308 (1992). The Implied Consent Law remains one of the Commonwealth's most effective tools against drunk driving, providing an effective means of quickly denying intoxicat-

---

**3.** In 1992, there were 14,225 alcohol related accidents on Pennsylvania's highways, causing the loss of 628 lives. 1192 Crash Facts and Statistics at 35 (Pennsylvania Department of Transportation).

ed motorists the use of the Commonwealth's highways. *Kostyk v. Commonwealth, Department of Transportation,* 131 Pa.Commw. 455, 570 A.2d 644 (1990); *Hando v. Commonwealth,* 84 Pa.Commw. 63, 478 A.2d 932 (1984); *Commonwealth v. Charles,* 270 Pa.Super. 280, 411 A.2d 527 (1979). It also helps facilitate the acquisition of chemical analyses and permits this information to be utilized in legal proceedings. *Commonwealth v. Tylwalk,* 258 Pa.Super. 506, 393 A.2d 473 (1978). Appellant's interpretation of the Implied Consent Law would unnecessarily hamper this effective weapon against drunk driving, since under Appellant's reading of Section 1547, a licensee could refuse a chemical test with impunity, and thereby frustrate any criminal prosecution, based solely upon who requests the test. An otherwise valid request should not be invalidated by the identity of the person who actually uttered the words.[4] If Appellant's argument were extended to its logical conclusion, this Court would be called upon to hold that the police officer must not only seek consent to the testing procedure, but must also draw the blood. The Legislature did not intend for such impractical or absurd results.

Accordingly, the Order of the Commonwealth Court is affirmed.

NIX, C.J., joins in this majority opinion.

ZAPPALA, J., files a concurring opinion in which Nix, C.J., and FLAHERTY and CAPPY, JJ., join.

MONTEMURO, J., participates by designation as a senior judge as provided by Rule of Judicial Administration 701(f).

ZAPPALA, Justice, concurring.

Because I agree that a police officer is not statutorily required to request that an arrestee submit to chemical test-

4. We do not address the Commonwealth Court's requirement that the police officer be present when the request to submit to chemical testing is made. To do so would be dicta. We simply hold that based on the facts of this case, the person requesting submission to a chemical test need not be a police officer. Since the officer was present here, the more troubling question does not arise of whether the absence of the police officer would change the results.

ing, I join the majority opinion. I write separately, however, to note my disagreement with the Commonwealth Court's conclusion that a police officer must be present when the request is made. The statutory language of § 1547 does not support this additional requirement. The only duty specifically imposed upon the officer by the statute is to advise the arrestee that refusal to submit to chemical testing will result in a suspension of operating privileges. 75 Pa.C.S. § 1547(b)(2). Once the warnings are given, the officer's presence, or lack thereof, is of no relevance to the requesting or taking of the test.

Moreover, as the Department illustrates in its brief, requiring officers to remain until the request to submit to chemical testing is made has an adverse effect on the growing use of county-wide or regional DUI processing centers throughout the Commonwealth. DUI processing centers provide a centralized chemical testing location where police officers who have made DUI arrests may take the person for chemical testing. After the officer has transported the arrestee and has given the appropriate warnings, the officer then relays the necessary information to the individuals in charge of the center and he is free to return to patrol duties. Requiring the officer's presence for the request to submit to testing thwarts the very purpose of those centers as the officers are forced to stay and wait instead of immediately returning to their patrols.

In summary, I see no reason for the duty imposed by the Commonwealth Court that the police officer be present when the Legislature has not so directed.

NIX, C.J., and FLAHERTY and CAPPY, JJ., join this concurring opinion.