IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Terrence G. Scott,                          :
                        Appellant           :
                                            :
            v.                              :
                                            :
Commonwealth of Pennsylvania,               :
Department of Transportation,               :   No. 317 C.D. 2024
Bureau of Driver Licensing                  :   Submitted: June 3, 2025

BEFORE:     HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE MATTHEW S. WOLF, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON                              FILED: July 7, 2025


            Terrence G. Scott (Licensee) appeals from the March 6, 2024 order
(Trial Court Order) of the Court of Common Pleas of Philadelphia County (Trial
Court) that dismissed Licensee's statutory appeal from a 12-month driver's license
suspension imposed by the Commonwealth of Pennsylvania, Department of
Transportation, Bureau of Driver Licensing (DOT), pursuant to what is commonly
known as the Vehicle Code's[1] Implied Consent Law, 75 Pa.C.S. § 1547(b) (Implied
Consent Law), as a result of Licensee's refusal to submit to chemical testing upon
his arrest for driving under the influence of alcohol or a controlled substance (DUI).[2]
Upon review, we affirm.

---

[1] Act of June 17, 1976, P.L. 162, No. 81, 75 Pa.C.S. §§ 101-9805.

[2] 75 Pa.C.S. § 3802.

## I. Background and Procedural Posture

The Pennsylvania State Police arrested Licensee for suspicion of DUI on the morning of May 20, 2023. *See* Notes of Testimony March 6, 2024 (N.T.) at 5, Reproduced Record (R.R.) at 15a. Thereafter, on May 31, 2023, DOT notified Licensee that his driving privilege would be suspended for a period of 12 months as a result of his refusal to submit to chemical testing. *See* License Suspension Notification mailed May 31, 2023, R.R. at 6a. Licensee appealed the suspension. *See* Trial Court Opinion dated April 24, 2024 (Trial Court Opinion) at 1 & Appendix at A-14. The Trial Court conducted a hearing on March 6, 2025, and dismissed the appeal by order that same day. *See* N.T., R.R. at 13a-20a; Trial Court Order, Appendix to Licensees' Br. at A-1. Licensee timely appealed to this Court on March 18, 2024. *See* Trial Court Opinion at 1.

## II. Issues

Licensee raises one claim on appeal before this Court:[3] a challenge to the Trial Court's denial of Licensee's statutory appeal based on the DOT DL-26B Implied Consent Warnings Form (DL-26B Form)[4] employed and completed by the

---

[3] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion." *Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

[4] The DL-26B Form, entitled "Chemical Test Warnings and Report of Refusal to Submit to a Blood Test as Authorized by Section 1547 of the Vehicle Code in Violation of Section 3802," contains the following Implied Consent Warnings:

> It is my duty as a police officer to inform you of the following:
>
> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

police and entered into evidence before the Trial Court in this matter. *See* Licensee's Br. at 4, 8-10. Specifically, Licensee argues that the evidence did not establish that the Pennsylvania State Police trooper who signed the DL-26B Form was present and heard the DL-26B Form being read to Licensee. *See* Licensee's Br. at 8, 10. Licensee also argues that the signature on the DL-26B Form by an officer who did not actually read the Implied Consent Warnings to Licensee rendered the DL-26B Form, and therefore Licensee's refusal to submit to chemical testing, defective. *See* Licensee's Br. at 9-10.

## III. Discussion

Section 1547(a) of the Vehicle Code provides, in pertinent part, that

> [a]ny person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been

---

2. I am requesting that you submit to a chemical test of blood.

3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

DL-26B Form, R.R. at 9a.

3

driving, operating or in actual physical control of the movement of a vehicle in violation of section . . . 3802 (relating to driving under influence of alcohol or controlled substance) . . . .

75 Pa.C.S. § 1547(a). When a licensee refuses to submit to properly requested chemical testing, the Implied Consent Law provides that DOT "shall suspend the operating privilege of the person[.]" 75 Pa.C.S. § 1547(b)(1).

> To sustain a license suspension under [the Implied Consent Law], DOT has the burden of establishing that (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once DOT meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (quoting *Wright v. Dep't of Transp., Bureau of Driver Licensing,* 788 A.2d 443, 445 (Pa. Cmwlth. 2001)). Here, Licensee challenges only the Trial Court's determination that Licensee was warned that refusal would result in a licensee suspension by arguing that the evidence did not show that the arresting Pennsylvania State Police trooper heard the Implied Consent Warnings given to Licensee and also that the fact that the trooper who signed the DL-26B Form was not the same trooper who read the Implied Consent Warnings rendered the warnings defective. Licensee is not entitled to relief.

4

At the hearing before the Trial Court, DOT presented the testimony of Pennsylvania State Trooper Joseph Koza. *See* N.T. at 4-19, R.R. at 14a-18a. Trooper Koza explained that he conducted a motor vehicle stop of Licensee in the early morning hours of May 20, 2023, after observing Licensee's vehicle driving the wrong way on a one-way road and nearly colliding head-on with another vehicle.[5] *See* N.T. at 6-7, R.R. at 15a-16a. Trooper Koza detected a strong odor of alcohol emanating from Licensee and the vehicle and observed that Licensee exhibited bloodshot, watery eyes, and slurred speech. *See* N.T. at 7, R.R. at 15a. Trooper Koza testified that Licensee further exhibited difficulty comprehending his conversation with Trooper Koza as well as instructions given during the encounter. *See* N.T. at 7-8, R.R. at 15a. Trooper Koza also observed an open container of alcohol in a brown paper bag on the passenger's side seat of Licensee's vehicle. *See* N.T. at 7, R.R. at 15a. Trooper Koza requested that Licensee submit to standard field sobriety testing. *See* N.T. at 8, R.R. at 15a. Licensee agreed and participated in the standard field sobriety tests, but performed unsatisfactorily.[6] *See* N.T. at 8, R.R. at 15a. After the field sobriety testing, Trooper Koza formed the professional opinion that Licensee was under the influence of alcohol and incapable of safe driving. *See* N.T. at 8, R.R. at 15a. Believing that Licensee had been operating his

---

[5] In fact, Trooper Koza testified that he observed Licensee's vehicle nearly hit the second vehicle after Trooper Koza had observed Licensee drive the wrong way down the one-way street, stop his vehicle, exit the vehicle and urinate in the street, and then return to the vehicle and continue the wrong way down the one-way street, at which time the near collision occurred. *See* N.T. at 6, R.R. at 15a.

[6] Trooper Koza explained that he conducted the horizontal gaze nystagmus test, which yielded six out of six clues of intoxication, the walk-and-turn test, which yielded five out of eight clues of intoxication, and the one-leg stand test, which yielded three out of four signs on intoxication. *See* N.T. at 8, R.R. at 15a.

vehicle under the influence of alcohol, Trooper Koza placed Licensee under arrest for suspicion of DUI at that time. *See* N.T. at 9, R.R. at 16a.

Regarding the Implied Consent Warnings, Trooper Koza explained that his signature appears on the DL-26B Form[7] below the Implied Consent Warnings on the line indicating that he read the Implied Consent Warnings to Licensee. *See* N.T. at 10 & 13, R.R. at 16a-17a. Trooper Koza also confirmed that his name, information, and signature appear below the Affidavit at the bottom of the DL-26B Form. *See* N.T. at 13, R.R. at 17a. Trooper Koza testified that he did not recall whether he was the trooper who read the DL-26B Form to Licensee, and that his partner that evening, Trooper Justin Howell, may have read the DL-26B Form.[8] Trooper Koza explained, however, that he was in fact present with Licensee when the Implied Consent Warnings were read. *See* N.T. at 11-12, R.R. at 16a. Trooper Koza testified that Licensee refused to submit to the requested chemical testing after having been read the Implied Consent Warnings. *See* N.T. at 12, R.R. at 16a. Additionally, Trooper Koza explained that he always provides motorists the opportunity to sign the DL-26B Form at the Philadelphia Police Administration Building, and that Licensee refused to sign the DL-26B Form when there. *See* N.T. at 15-16, R.R. at 17a.

On cross-examination, Trooper Koza again testified that he had filled out and signed the DL-26B Form. *See* N.T. at 13, R.R. at 17a. Trooper Koza

---

[7] The DL-26B Form was admitted into evidence without objection. *See* N.T. at 19, R.R. at 18a.

[8] Trooper Koza stated that the length of time that had passed since Licensee's arrest and the number of DUI arrests he conducted that calendar year were the reasons he could not for certain recall whether or not he had personally read the DL-26B Form warnings to Licensee in particular. *See* N.T. at 10, R.R. at 16a.

6

testified that he should have been the trooper to read the Implied Consent Warnings from the DL-26B Form and should have been in the front seat of the police cruiser when those warnings were read. *See* N.T. at 13-14, R.R. at 17a. Trooper Koza conceded that the Mobile Video Recorder (MVR) footage played during his testimony showed Trooper Howell in the vehicle. *See* N.T. at 17, R.R. at 18a. Trooper Koza also testified that it was not his voice reading the Implied Consent Warnings from the DL-26B Form to Licensee. *See* N.T. at 17, R.R. at 18a.

Based on the evidence presented,[9] the Trial Court concluded as follows:

The uncontroverted evidence played during the trial evinces Trooper Howell reading the DL-26B [F]orm to [Licensee]. Trooper Koza also gave credible testimony that [Licensee] subsequently refused to submit to a chemical test. Th[e Trial C]ourt did not err by denying [Licensee's] appeal because the record reveals that [Licensee] was read the DL-26B [F]orm and that he subsequently refused to submit to a chemical test.

Trial Court Opinion at 4. We find no error with the Trial Court's conclusion.

Initially, no argument exists that Licensee was not read the Implied Consent Warnings from the DL-26B Form by the police, albeit not by Trooper Koza. Trooper Koza testified that he was present and heard the Implied Consent Warnings given. *See* Trial Court Opinion at 2-3. The Trial Court found credible Trooper Koza's testimony that he heard Trooper Howell read the Implied Consent Warnings to Licensee. The Trial Court also found as a fact that the police did read the required warnings. *See* Trial Court Opinion at 3. Further, the MVR depicted Trooper Howell

---

[9] Following Trooper Koza's testimony, Licensee put forth no evidence to establish that he either was not capable of making a knowing and conscious refusal or was physically unable to take the test. *See* N.T. at 19-21; R.R. at 18a-19a.

reading the DL-26B Form to Licensee. *See* Trial Court Opinion at 2. Based on this evidence, the Trial Court determined that Licensee was given the Implied Consent Warnings and was further given a reasonable chance to submit to chemical testing. *See* Trial Court Opinion 2-4. We find that no error with the Trial Court's determination, as substantial evidence supports the Trial Court's conclusion that the police read the required Implied Consent Warnings from the DL-26B Form to Licensee. Therefore, to the extent Licensee invites this Court to reweigh the evidence and conclude that Trooper Koza did not actually hear Trooper Howell read the Implied Consent Warnings from the DL-26B Form, we decline to do so.[10]

Further, we are not convinced by Licensee's argument that Trooper Koza's failure to read the DL-26B Form himself in some way invalidated his signature on the DL-26B Form or negated Licensee's refusal to submit to chemical testing after having heard the warnings. Licensee provides no support for the proposition that Implied Consent Warnings given by police to a motorist are

---

[10] As this Court has observed:

> Questions of credibility and conflicts in the evidence presented are for the trial court to resolve and are improper questions for appellate review.
>
> As long as sufficient evidence exists in the record which is adequate to support the finding found by the trial court, as factfinder, an appellate court is precluded from overturning that finding and must affirm, thereby paying the proper deference due to the factfinder who heard the witnesses testify and was in the sole position to observe the demeanor of the witnesses and assess their credibility.

*Mooney v. Dep't of Transp., Bureau of Driver Licensing*, 654 A.2d 47, 50 (Pa. Cmwlth. 1994) (quoting *Department of Transp., Bureau of Traffic Safety v. O'Connell,* 555 A.2d 873 (Pa. 1989)) (internal citations and brackets omitted).

somehow invalidated when an officer who was present and heard the warnings read to a motorist signs a DL-26B Form as the officer who administered the warnings despite not being the officer who actually read the warnings to the motorist.

As this Court has noted,

> [o]nce a police officer provides the implied consent warnings to a motorist, the officer has done all that is legally required to ensure the motorist is fully advised of the consequences of her failure to submit to chemical testing. All that is required is that the officer read the warnings to the licensee and that the licensee be given a meaningful opportunity to comply with the Implied Consent Law.

*Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018) (internal citation omitted). Therefore, once the warnings have been given, the police have complied with the warning portion of their obligations. *See id.*

The legal consequence of a police officer who did not read a motorist the Implied Consent Warnings from the DL-26B Form then signing the DL-26B Form as the officer who did read the warnings has not been previously addressed by this Court. However, the Supreme Court of Pennsylvania's decision in *Occhibone v. Department of Transportation, Bureau of Driver Licensing*, 669 A.2d 326 (Pa. 1995), is instructive by analogy. In *Occhibone*, a motorist appealed his license suspension by arguing that his refusal was ineffective to support a license suspension because, after the police had read the Implied Consent Warnings, a lab technician and not the police requested the motorist submit to chemical testing. *See Occhibone*, 669 A.2d at 327. Our Supreme Court noted that the Implied Consent Law does not specify who must request chemical testing and applied the considerations of the

9

Statutory Construction Act of 1972 to determine that someone other than a police officer could make the request for chemical testing. *See id.* at 328. The Supreme Court explained:

> The object of the Implied Consent [Law] is to reduce the number of motorists driving under the influence, as the Commonwealth has a compelling interest in protecting its citizens from the dangers posed by drunk drivers. The Implied Consent Law remains one of the Commonwealth's most effective tools against drunk driving, providing an effective means of quickly denying intoxicated motorists the use of the Commonwealth's highways. It also helps facilitate the acquisition of chemical analyses and permits this information to be utilized in legal proceedings.

*Id.* at 328 (internal citations and footnote omitted). The Supreme Court then found that the appellant's preferred interpretation of the Implied Consent Law that only a police officer is permitted to request the chemical testing "would unnecessarily hamper this effective weapon against drunk driving, since under [the a]ppellant's reading of Section 1547, a licensee could refuse a chemical test with impunity, and thereby frustrate any criminal prosecution, based solely upon who requests the test." *Id.* The Supreme Court ultimately determined that "[a]n otherwise valid request should not be invalidated by the identity of the person who actually uttered the words." *Id.* (footnote omitted).

In reviewing the instant matter's analogous fact pattern, we observe that it is the Implied Consent Law, and not the DL-26B Form, that imposes both the obligation on the police to provide a motorist with the Implied Consent Warnings and the consequences for a motorist who refuses to submit to chemical testing after receiving the warnings. *See* 75 Pa.C.S. § 1547. The DL-26B Form, on the other

10

hand, is a form created by DOT and employed by police to aid in and ensure the administration of proper Implied Consent Warnings and to evince that the police have complied with the Implied Consent Law's requirement that police provide motorists with adequate warnings of the consequences of refusal to submit to chemical testing when requested by police in conjunction with a DUI arrest. The Implied Consent Law itself makes no reference to the DL-26B Form or any other method of mandatory proof required to somehow validate the warnings provided pursuant to the Implied Consent Law. *See* 75 Pa.C.S. § 1547. The Implied Consent Law instead simply requires that motorists receive certain warnings regarding the consequences of refusal of requested chemical testing. *See id.* By providing a script for police to follow to ensure the administration of proper/adequate warnings regarding a motorist's refusal to submit to requested chemical testing in conjunction with a DUI arrest, the DL-26B Form does not create a further requirement that a properly executed DL-26B Form be employed to validate the Implied Consent Warnings given. In turn, the existence of the DL-26B Form does not create a situation whereby Implied Consent Warnings given by police via reading the DL-26B Form are rendered defective by the form being incorrectly signed. To rule otherwise would create a situation where adequate Implied Consent Warnings properly given would be negated by an incorrect or improperly placed signature on a form not required by the Implied Consent Law in the first place.

Here, as discussed *supra*, regardless of which trooper signed the DL-26B Form, the Trial Court found as a fact that the police provided Licensee with the Implied Consent Warnings. While the Court does not condone inattentive police work, the fact that the police provided Licensee with the required Implied Consent Warnings does not change by virtue of which officer signed the DL-26B Form

11

indicating that the warnings were provided. As in *Occhibone*, where the Supreme Court determined that an otherwise valid request for chemical testing should not be invalidated by the identity of the person who actually uttered the request, we find that valid and properly administered Implied Consent Warnings should not be invalidated by the signature on a form not required by the Implied Consent Law of a police officer who was present and heard the Implied Consent Warnings administered, but who did not actually read the warnings himself. Therefore, while we observe that the proper completion of the DOT-created DL-26B Form is well-advised and can provide excellent evidence of the police having complied with their legal obligations to advise motorists of the consequences of refusing to submit to chemical testing, we find that the failure of the police to properly fill out the DL-26B Form does not negate or render defective otherwise adequate Implied Consent Warnings provided to a motorist pursuant to the Implied Consent Law where the Implied Consent Law does not require the use of such form. Instead, an improperly completed DL-26B Form will require DOT to produce evidence that explains the irregularities in the DL-26B Form submitted and/or produce additional, alternative evidence that the police provided proper Implied Consent Warnings, which evidence a trial court can then credit as it sees fit.

We further observe that the DL-26B Form contains an affidavit (DL-26B Affidavit) that verifies that police complied with the requirements of the Implied Consent Law, including the reading of the Implied Consent Warnings to a licensee. *See* DL-26B Form, R.R. at 9a. The DL-26B Affidavit is a certification that the operator who has been asked to submit to chemical testing was placed under arrest on suspicion of DUI and was requested to submit to chemical testing, that the operator was read the implied consent warnings "by a police officer," and that the

12

operator refused the request to submit to chemical testing.[11]  *See* DL-26B Form, Affidavit, R.R. at 9a.  Trooper Koza completed the required information[12] and signed the DL-26B Affidavit in this matter.  By its language, the DL-26B Form's Affidavit requires, consistent with the Implied Consent Law, that the refusal warnings be read "by a police officer," but does not require that officer to be the same officer who executes the Affidavit.  The DL-26B Affidavit further instructs the certifying police officer to "[p]lease list the name, badge number, and phone number of arresting

---

[11] The DL-26B Affidavit reads, in its entirety:

AFFIDAVIT

1. The above operator was placed under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code, and there were reasonable grounds to believe that the above operator had been driving, operating or in actual physical control of the movement of a vehicle while in violation of Section 3802.

2. The above operator was requested to submit to a blood test as authorized by Section 1547 of the Vehicle Code.

3. The above operator was read by a police officer the chemical test warnings contained in paragraphs 1 through 4 above.

4. The above operator refused to submit to a blood test after having been read the above warnings.

I certify that all the information given in this form is true and correct to the best of my knowledge, information and belief.

DL-26B Affidavit, R.R. at 9a.

[12] The DL-26B Affidavit has blank spaces for the following information to be filled out by the police:  Officer's Signature; Officer's Name; Officer's Phone Number; Officer's Email; Police Department Email; Badge Number; Jurisdiction; and Mailing Address.  *See* DL-26B Affidavit, R.R. at 9a.

13

officer if not the same officer who witnessed the refusal." DL-26B Affidavit, R.R. at 9a (all capital letters omitted). The DL-26B Affidavit continues with: "Note: Any pertinent facts not covered by the [DL-26B A]ffidavit should be submitted on a separate sheet and attached hereto. That sheet should include the names of additional witnesses necessary to prove the elements to which you have attested." DL-26B Affidavit, R.R. at 9a. Thus, this additional instruction and attendant notation[13] further illustrate that the DL-26B Form itself is not a requirement of the Implied Consent Law, but instead acts as one piece of evidence to be employed, if needed, to illustrate police compliance with the requirements of the Implied Consent Law, and is a piece of evidence that can be supplemented by other evidence. Again, the DL-26B Form is evidence of compliance with the Implied Consent Law, not a requirement of the Implied Consent Law without which a license suspension for a refusal to submit to requested chemical testing cannot proceed, or an error that renders defective the Implied Consent Warnings given by police.

### IV. Conclusion

For the above reasons, we affirm the Trial Court Order.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[13] We observe that Trooper Koza did not complete the additional instruction and attendant notation in this instance. *See* DL-26B Form, R.R. at 9a.

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Terrence G. Scott,                              :
                    Appellant                   :
                                                :
        v.                                      :
                                                :
Commonwealth of Pennsylvania,                   :
Department of Transportation,                   :    No. 317 C.D. 2024
Bureau of Driver Licensing                      :

# **O R D E R**

AND NOW, this 7th day of July, 2025, the March 6, 2024 order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge