758 A.2d 1155

COMMONWEALTH of Pennsylvania, DEPARTMENT
OF TRANSPORTATION, Appellant,

v.

Elaine M. McCAFFERTY, Steven Hirsh, Benjamin Mather, Gregory Joseph Skalicky, James J. Greer, George Allen, Michael Proud, Douglas Byer, Brian Walsh, David McIntyre, Phong Hoang Nguyen, Jose Cotto, Walter H. Blatz, Charles Boris, William Tindal, Wayne Zimmerman, Louis Heebner, Michael J. Hofferica, Ronald Ziajka, John Wooten, Daniel Mallon, and Stewart Scott, Appellees.

Supreme Court of Pennsylvania.

Argued Feb. 1, 1999.

Decided Sept. 28, 2000.

148

Timothy P. Wile, Harrisburg, for the Com., DOT.

Michael K. Parlos, for D. McIntyre.

Martin B. Katz, for P. Ngyen.

B. David Marcial, Philadelphia, for J. Cotto.

Bruce Wolf, Caraopolis, for W. Blatz.

George Twardy, Jr., Philadelphia, for J. Wooten.

James J. Greer, Pro Se.

William Tindal, Pro Se.

Elaine M. McCafferty, Pro Se.

Charles Boris, Pro Se.

Michael W. Cassidy, Huntingdon Valley, for Douglas Byer.

Vincent W. Furlong, for G. Skalicky.

Charles G. Nistico, Media, for S. Hirsh.

Donald M. Preminger, Philadelphia, for M. Hofferica.

Paul J. Hetznecker, Philadelphia, for B. Mather.

Ely Goldin, Media, for G. Allen.

Thomas P. Pfender, for M. Proud.

Richard K. Doty, Philadelphia, for B. Walsh.

Brian R. Williams, Philadelphia, for R. Ziajka.

Daniel L. Dolfman, for L. Heebner.

Wayne A. Zimmerman, Pro Se.

Stewart B. Scott, Pro Se.

Daniel G. Mallon, Pro Se.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CASTILLE, Justice.

This matter comes before this Court pursuant to 42 Pa.C.S. § 722(7) [1] to determine whether the Court of Common Pleas ("trial court") erred in concluding that the Driver's License Compact of 1961 ("Compact"), incorporated into the Motor Vehicle Code at 75 Pa.C.S. §§ 1581–1585, violates the Double Jeopardy Clause of the United States Constitution; [2] the Equal Protection Clause of the United States Constitution; [3] and the Due Process Clause of the United States Constitution [4] by requiring the imposition of one-year suspensions of the driver's license operating privileges of the appellees. For the reasons that follow, we determine that the Compact comports with the relevant Constitutional and statutory provisions. We, therefore, reverse the order of the trial court.

The facts underlying this appeal are not in dispute. On December 10, 1996, Governor Thomas Ridge signed Act 1996–149 into law, adding sections 1581 through 1585 to the Motor

1. The statute provides:
 The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases:

 \* \* \* \* \* \*

 (7) Matters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or any statute of, this Commonwealth, or any home rule charter.

2. U.S. Const. amend. V.
3. U.S. Const. amend. XIV.
4. U.S. Const. amend. XIV.

Vehicle Code and making Pennsylvania a party state to the Compact. Under Article IV(a)(2) and (c) of the Compact, each party state agrees that, if a person licensed in that state is convicted in another party state for an offense "substantially similar" to driving under the influence of alcohol to a degree that renders the licensee incapable of safe driving ("DUI"), then the party state must treat the out-of-state conviction as if it occurred in that state for the limited purpose of determining whether to suspend that person's driver's license. Section 1532(b)(3) of the Pennsylvania Motor Vehicle Code requires that PennDOT suspend for one year the operating privilege of any person convicted of violating 75 Pa.C.S. § 3731(a) (relating to driving under the influence of alcohol and/or a controlled substance).[5]

Appellees, all of whom possessed valid Pennsylvania drivers' licenses at the time, were convicted of DUI offenses in other states that are parties to the Compact. Appellee Mather was convicted in Ohio; appellee Byer was convicted in Florida; appellee Scott was convicted in Virginia; and the remaining appellees were convicted in New Jersey. Pursuant to their reporting obligations under Article III of the Compact, authorities in those states reported appellees' DUI convictions to PennDOT. In accordance with the requirements of Article IV(1)(b) of the Compact, PennDOT treated appellees as if they had been convicted of violating 75 Pa.C.S. § 3731(a) and notified them that their Pennsylvania operating privileges

---

**5.** Section 3731(a) provides:

(A) OFFENSE DEFINED.—A person shall not drive, operate or be in actual physical control of the movement of a vehicle in any of the following circumstances:

(1) While under the influence of alcohol to a degree which renders the person incapable of safe driving. . . .

(2) While under the influence of any controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as the Controlled Substance, Drug, Device and Cosmetic Act, to a degree which renders the person incapable of safe driving.

(3) While under the combined influence of alcohol and any controlled substance to a degree which renders the person incapable of safe driving.

(4) While the amount of alcohol by weight in the blood of:

(i) an adult is 0.10% or greater; or

(ii) a minor is .02% or greater.

would be suspended for one year. Thereafter, each of the appellees filed a statutory appeal with the Court of Common Pleas of Philadelphia County, Civil Division.

On December 31, 1997, after conducting *de novo* hearings, the trial court granted appellees' statutory appeals and reversed the one-year suspensions imposed by PennDOT. Specifically, the trial court determined that the application of Article IV of the Compact to appellees violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Pennsylvania Constitution, as well as the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The trial court also determined that PennDOT's documentation was constitutionally deficient because PennDOT's certified records stated that appellees were convicted of violating 75 Pa.C.S. § 3731(a) rather than referencing the specific out-of-state statutes that furnished the basis for the underlying convictions, thereby violating appellees' procedural due process rights. On December 31, 1997, the trial court entered an Order consolidating all of appellees' statutory appeals for purposes of further appeal. PennDOT filed a timely notice of appeal to this Court.

Because the instant appeal presents this Court with pure questions of law, our scope of review is plenary and we are not bound by the trial court's conclusions of law. *Department of Transportation, Bureau of Driver Licensing v. Clayton*, 546 Pa. 342, 346 n. 4, 684 A.2d 1060, 1062 n. 4 (1996). At the outset, appellee Steven Hirsh argues that there is no statutory authority for the license suspensions at issue.[6] Be-

---

**6.** Hirsh is the only appellee who has submitted a counseled brief in this matter. Appellee Stewart B. Scott has submitted a *pro se* letter brief, in which he merely argues that the conviction date on the report of his conviction sent to PennDOT by the Virginia Department of Motor Vehicles is incorrect. In support of his argument, appellee Scott relies solely on documentary evidence attached to his brief but not of record; therefore, we may not consider it. *Commonwealth v. Young*, 456 Pa. 102, 115, 317 A.2d 258, 264 (1974) (appellate court may consider only matters certified in the record on appeal). None of the other appellees have filed briefs or joined in the briefs filed by Hirsh or Scott pursuant to Pa.R.A.P. 2137.

cause this Court will not address the constitutionality of an act of the legislature if there are other grounds for disposing of the issue, we will address appellee's alternative statutory claims first. *See Boettger v. Loverro,* 526 Pa. 510, 518, 587 A.2d 712, 715 (1991) (when serious doubt of constitutionality of a statute is raised, this Court will first look to construe the statute in a way that avoids the constitutional question). In reviewing the claims raised by both parties, we note that the Compact is to be liberally construed so as to effectuate its purpose. Compact, Art. IX.

 First, Hirsh contends that there is no statutory authority to implement a suspension of a Pennsylvania license for an out-of-state offense that is the equivalent of § 3731(a) of the Pennsylvania Motor Vehicle Code (relating to driving while under the influence). We disagree. The Compact, which is incorporated into the Motor Vehicle Code at 75 Pa.C.S. § 1581, provides in pertinent part:

### Article II

### Definitions

As used in this compact:

\* \* \* \* \* \*

(c) "Conviction" means a conviction of any offense related to the use or operation of a motor vehicle which is prohibited by state law ... and which conviction ... is required to be reported to the licensing authority.

### Article III

### Reports of Conviction

The licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee....

## Article IV

### Effect of Conviction

(a) The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to Article III of this compact, as it would if such conduct had occurred in the home state in the case of convictions for:

* * * * * *

(2) driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle.

* * * * * *

(c) If the laws of a party state do not provide for offenses or violations denominated or described in precisely the words employed in subdivision (a) of this article, such party state shall construe the denominations and descriptions appearing in subdivision (a) of this article as being applicable to and identifying those offenses or violations of a substantially similar nature and the laws of such party state shall contain such provisions as may be necessary to ensure that full force and effect is given to this article.

Thus, by the plain terms of the Compact, whenever a person licensed to drive in Pennsylvania is convicted in a party state of DUI, Pennsylvania is required to give the same effect to the out-of-state conduct as it would give to that conduct if it had occurred in Pennsylvania. PennDOT is required to suspend the license of any Pennsylvania licensee who is convicted of DUI. 75 Pa.C.S. § 1532(b)(3). Therefore, under the plain language of the Compact, the same license suspension must result in Pennsylvania where a conviction arising out of that conduct occurred in New Jersey.

█ Next, Hirsh argues in the alternative that his license should have been suspended, if at all, under Section 1581 of the Motor Vehicle Code (the provision incorporating the oper-

ative section of the Compact). Hirsh prefers this result because he believes it would have made him eligible for an occupational limited license. However, § 1581 does not in itself authorize the suspension of a driver's license; instead, it merely directs the licensing state to treat the conduct underlying an out-of-state conviction as if it were conduct that occurred in the licensing state for purposes of a license suspension.[7] Because PennDOT must give appellee's conduct the same effect as if it had occurred within Commonwealth borders, appellee's license was properly suspended under § 1532(b)(3).

■■■ Having concluded that we cannot affirm the Order of the trial court on the alternative statutory grounds proffered by appellee, we must now address whether the trial court erred in determining that the Compact was unconstitutional. Initially, we note that a statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. *Commonwealth v. Hendrickson*, 555 Pa. 277, 280–81, 724 A.2d 315, 317 (1999); *Commonwealth v. Barud*, 545 Pa. 297, 304, 681 A.2d 162, 165 (1996). Therefore, the party challenging the constitutionality of a statute has a heavy burden of persuasion. *Barud, supra.*

PennDOT first contends that the trial court erred by determining that the imposition of one-year suspensions of appellees' operating privileges violated the Double Jeopardy Clauses of both the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Pennsylvania Constitution. We agree that the trial court's analysis of the double jeopardy question is flawed.

7. We note that, even if appellee were correct that his license should have been suspended under § 1581, he would not have been eligible for an occupational limited license because that statute prohibits issuance of such a license when an applicant has been convicted of DUI, not merely of violating § 3731. 75 Pa.C.S. § 1553(d)(6) (prohibiting issuance of occupational limited license to person who has been convicted of driving under the influence).

█ Under the Double Jeopardy Clause of the Fifth Amendment and Article I, Section 10, when a single criminal act violates the sovereignty of two distinct sovereigns, each sovereign may separately punish the offender without violating the Double Jeopardy Clause. *Heath v. Alabama,* 474 U.S. 82, 87, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985).[8] Even if we assume for purposes of this argument that the license suspensions at issue were criminal punishment—an argument that we reject below—there was no double jeopardy violation in the cases *sub judice.*

█ The states of the Union are considered separate and distinct sovereigns for double jeopardy purposes. The dual sovereignty doctrine compels the conclusion that successive prosecutions by two states for the same conduct are not barred by the Double Jeopardy Clause. *Id.* Thus, as long as appellees violated the sovereignty of Pennsylvania by driving with a valid Pennsylvania driver's license while under the influence of alcohol in another state, PennDOT may impose a separate sanction beyond that imposed by the other state without violating the Double Jeopardy Clause.

The conduct of appellees here did in fact violate the sovereignty of the Commonwealth of Pennsylvania. This Commonwealth granted appellees the privilege of driving, a privilege that permitted appellees to operate their motor vehicles in our sister states without separate or additional licensure there. Along with that privilege comes a responsibility to abide by the rules of the road. This Commonwealth has a compelling interest in protecting our citizens, and even the citizens of our sister states, from the dangers posed by Pennsylvania-licensed intoxicated drivers. *Occhibone v. Dept. of Transp.,* 542 Pa. 588, 592, 669 A.2d 326, 328 (1995) (citations omitted). This

**8.** Generally, the double jeopardy protection provided by Article I, § 10 of the Pennsylvania Constitution is coextensive with that provided by the Fifth Amendment of the United States Constitution. *Commonwealth v. Kunish,* 529 Pa. 206, 602 A.2d 849 (1992). *But see Commonwealth v. Smith,* 532 Pa. 177, 186, 615 A.2d 321, 325 (1992). Because no argument has been made for broader protection under the state constitution in this case, we will address the claim under the federal standard.

interest must certainly extend to protecting citizens of the Commonwealth from Pennsylvania-licensed drivers who have been convicted of driving while under the influence of alcohol on the highways of our sister states. The driver's licensing procedure represents an attempt to ensure that the use of Commonwealth highways will be afforded only to persons who can and will drive safely. By operating vehicles in other states while under the influence, appellees have demonstrated their unwillingness to comply with the vehicle and traffic laws while operating a vehicle in this Commonwealth. *See Sheehy Motor Vehicle Operator License Case,* 196 Pa.Super. 122, 129, 173 A.2d 752, 755 (1961) ("The conviction is evidence of a state of mind. It indicates a lack of concern for the rules of the road . . . the relationship between the safety of our highways and the control over our own licensed operators who have been convicted of motor vehicle violations in other states is self-evident"). Thus, by driving in Florida, New Jersey, Ohio or Virginia while under the influence, appellees have concomitantly violated the sovereign interests of this Commonwealth as the driver's licensing jurisdiction. Accordingly, Pennsylvania did not run afoul of Constitutional double jeopardy principles by entering into a Compact with other states that allowed it to impose additional sanctions on licensed drivers of the Commonwealth for their convictions in other states for driving while under the influence.

▪ Although the dual sovereignty principle set forth above precludes appellees from advancing a double jeopardy argument on federal or state constitutional grounds, appellees also argue that the additional sanction imposed by the Commonwealth in this case violates statutory double jeopardy principles incorporated in 18 Pa.C.S. § 111 of the Crimes Code. The relevant provision states:

§ 111. When prosecution barred by former prosecution in another jurisdiction.

When conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States or another state, a prosecution in any such jurisdiction is a bar to a subsequent prosecution in this Commonwealth under the following circumstances:

(1) The first prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is based on the same conduct . . . . [exceptions not applicable].

In order to find that the additional sanction imposed on appellees by Pennsylvania authorities violated § 111, we would have to find that the sanction was imposed pursuant to "subsequent prosecutions" in Pennsylvania for violations based on the same conduct as former prosecutions in other states. 18 Pa.C.S. §§ 109, 111. PennDOT argues that there was no "prosecution" by the Commonwealth in this matter such that § 111 would be implicated, and instead characterizes the proceedings initiated by PennDOT against appellees as the imposition of collateral civil consequences. We agree with PennDOT that the proceeding initiated against appellee was not a second prosecution for purposes of § 111.

In *Commonwealth v. Duffey,* 536 Pa. 436, 639 A.2d 1174 (1994), this Court held that license suspensions are collateral civil consequences rather than criminal penalties. Although that case involved a mandatory 90–day license suspension triggered by a criminal conviction for underage drinking in Pennsylvania, this Court, citing a number of other cases that reached the same conclusion in other circumstances, held that a difference in the circumstances that resulted in the license suspension did not alter the nature of the suspension. *Id.* at 440–41, 639 A.2d at 1176 (*citing Commonwealth v. Englert,* 311 Pa.Super. 78, 457 A.2d 121 (1983) (suspension imposed following a conviction for failing to stop at the scene of an accident constituted a civil collateral consequence) and *Brophy v. Department of Transportation,* 94 Pa. Commw. 310, 503 A.2d 1010 (1986) (operating privilege suspension as a habitual offender constitutes a collateral civil consequence of acceptance of ARD on the underlying offense) (other citations omitted)).

In reaching this conclusion, the *Duffey* Court noted that "[a] consequence is civil in nature where, 'imposition has been

vested in an administrative agency over which the criminal judge has no control and for which he has no responsibility.'" *Id.* at 442, 639 A.2d at 1177 (citations omitted). As in *Duffey,* the license suspension in appellees' cases was imposed by an administrative agency acting without discretion. Thus, we hold that the mandatory license suspension imposed by PennDOT pursuant to the Compact constitutes a collateral civil consequence of the out-of-state conviction. Consequently, appellees cannot sustain a claim that they were twice prosecuted for the same conduct in violation of § 111.

 PennDOT further contends that the trial court erred in concluding that the imposition of a separate license suspension by Pennsylvania authorities violates the Fourteenth Amendment's guarantee of equal protection. Although the trial court opinion does not explain the rationale for this determination, it appears that the trial court believed that the imposition of a suspension based upon appellees' out-of-state conviction violated equal protection principles because, had these DUI offenses occurred in Pennsylvania, appellees may have been eligible for an Accelerated Rehabilitative Disposition ("ARD") diversionary program and may have suffered a much shorter period of suspension.[9] We reject the trial court's analysis in this area because the Compact does not create *any* suspect classifications, either facially or through its enforcement, that would implicate the Equal Protection Clause. *See Commonwealth v. Barud,* 545 Pa. 297, 307 n. 5, 681 A.2d 162, 166 n. 5 (1996) (citations omitted) (equal protection claim fails if proponent of claim does not make threshold showing that the statute actually creates a classification). The statute accords identical treatment to all Pennsylvania licensees convicted of DUI, whether in Pennsylvania or in another state, by treating the conduct that results in an out-of-state DUI conviction as if it was conduct that occurred in Pennsylvania. The statute simply does not single out any group of

9. Appellee Hirsh has not addressed this issue in his brief. Thus, no appellee attempts to defend this particular ruling by the trial court. However, we do note that ARD is not a "right" or a foregone conclusion in Pennsylvania. Its availability rests in the discretion of the prosecutor. *Commonwealth v. Lutz,* 508 Pa. 297, 495 A.2d 928 (1985).

Pennsylvania licensees for disparate treatment. Consequently, the trial court erred in striking the statute down on the basis of the Equal Protection Clause.

PennDOT's final argument is that the trial court erred in concluding that the imposition of a separate license suspension by Pennsylvania authorities in these cases violates procedural due process.[10] Decisions of the United States Supreme Court have made it clear that a person's interest in his driver's license is "property," which a State may not revoke or suspend without satisfying the due process guarantee of the Fourteenth Amendment. *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). *Cf. Pennsylvania Game Comm'n v. Marich*, 542 Pa. 226, 233, 666 A.2d 253, 257 (1995) (driver's license, which is a privilege and not a right, may not be suspended without adherence to procedural due process requirements of the Fourteenth Amendment); *Commonwealth v. Zimmick*, 539 Pa. 548, 558, 653 A.2d 1217, 1222 (1995) (same). The constitutional guarantee of procedural due process has always been understood to embody a presumptive requirement of notice and a meaningful opportunity to be heard before the State acts finally to deprive a person of his property. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

The trial court concluded that the official Pennsylvania driving records certified by PennDOT in these cases were deficient because they stated that appellees were convicted for violations of 75 Pa.C.S. § 3731(a) rather than identifying the specific *out-of-state* DUI statutes under which appellees were actually convicted. At the outset, the trial court's characterization of appellees' Pennsylvania driving records is inaccurate. Although PennDOT's records do indicate that appellees' licenses were suspended for violations of § 3731 of the Motor Vehicle Code, the records further specifically indicate that the

10. Unlike the trial court's other holdings of unconstitutionality, this holding does not involve a finding that the *statute* is unconstitutional, but rather that PennDOT's suspensions on the facts of these particular cases denied appellees procedural due process. Because the trial court's holdings regarding the constitutionality of the statute have vested jurisdiction in this Court, we will also decide this issue.

suspensions were imposed *pursuant to the Compact.* While it may have been preferable for PennDOT to certify at trial documents that cited the specific out-of-state statute under which appellees were originally convicted, PennDOT's failure to do so in this matter did not deprive appellees of their constitutional right to procedural due process because it did not deprive them of notice or a meaningful opportunity to be heard. Appellees do not dispute that they were convicted of the out-of-state DUI offenses, nor do they assert that they lacked notice of the actual convictions that led to the suspension proceedings or that they were denied notice of the nature of the suspension proceeding itself.[11] The due process clause does not create a right to be deliberately obtuse as to the nature of a proceeding. Appellees here knew exactly what was happening to them and why.

Furthermore, nothing in PennDOT's certified records resulted in PennDOT's decision to suspend appellees' licenses; to the contrary, the record of suspension is the *result* of that ministerial determination. If appellees wish to challenge the accuracy of their driving records on the grounds that it is not clear from the records that the suspensions were based on out-of-state convictions, they may do so under 75 Pa.C.S. § 1516(d) (licensees may request that driving records be updated). Should they choose to do so, however, any amendment to the accuracy of the record will not result in the reinstatement of their driving privileges. Such an amendment to the driver's license record would simply clarify the record as to the specific nature of the suspension. Accordingly, we reject the trial court's determination that appellees were denied procedural due process.

Appellee Hirsh also argues that N.J.S. § 39:4–50(a), the New Jersey DUI provision that he violated, is not "equivalent

11. Appellee Hirsh admitted that the initial notification he received from PennDOT specifically informed him that his license was being suspended because PennDOT received notification of his New Jersey DUI conviction and that that conviction was equivalent to Pennsylvania's DUI statute. The notices of suspension sent to the other licensees likewise specifically stated that the suspensions were based on out-of-state convictions and identified the states in which those offenses had occurred and the conviction dates.

to" 75 Pa.C.S. § 3731 because the statute covers conduct other than driving under the influence to a degree that renders the driver incapable of safe driving. Although the trial court acknowledged that appellee Hirsh had raised this claim, it did not engage in any analysis of this claim. Moreover, Penn-DOT, as the appellant in this case, has not briefed this issue. Therefore, in light of our determination that the trial court's ruling on constitutional grounds must be reversed, we will remand this issue to the trial court to consider in the first instance whether N.J.S. § 39:4-50(a) is substantially similar to 75 Pa.C.S. § 3731 for purposes of Article IV(c) of the Compact.

 Finally, appellee Hirsh suggests that the report of his conviction provided by New Jersey to PennDOT in his case did not strictly comply with New Jersey's obligation under Article III of the Compact.[12] To the extent that appellee attempts to raise a separate claim relating to the non-compliant report, he has failed to include it in his Statement of Questions Involved and has not developed it as a separate argument. Accordingly, the claim is waived. Pa.R.A.P. 2116(a). Nonetheless, because the trial court opinion indicates its belief that the Compact must be strictly enforced, Penn-DOT has addressed the question, and because the concurring and dissenting opinion addresses the question, we will discuss it briefly.

 Appellee Hirsh merely argues that the lack of specific details regarding the conduct underlying the conviction in New Jersey makes it impossible to determine whether that

---

**12.** Article III of the Compact provides:

Reports of Conviction

The licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted, describe the violation specifying the section of the statute, code or ordinance violated, identify the court in which action was taken, indicate whether a plea of guilty or not guilty was entered or the conviction was a result of forfeiture of bail, bond or other security and shall include any special findings made in connection therewith.

conduct would result in a license suspension if the out-of-state conduct was committed in Pennsylvania. However, the information that was not included in New Jersey's report would not have provided any additional information regarding the actual conduct underlying the conviction. The report provided by New Jersey merely failed to identify the court in which action was taken and to indicate appellee's plea and whether the conviction was the result of forfeiture of bail, bond or other security. Compact, Art. III; Reproduced Record at 18a. None of this information would have shed any light on the *conduct* underlying appellee's conviction; it is the *conduct* underlying the conviction that triggers PennDOT's duties under the Compact.

Finally, Article III is clearly mandatory for a party state reporting a conviction within its jurisdiction. Article III therefore imposes an obligation on PennDOT only when it is the state reporting the conduct, not when it is the home state.[13] It does not prohibit PennDOT, as the licensing authority in the *home state*, from relying on the information contained in the report even if the report lacks certain information specified in Article III. Nor does anything in Article III render the New Jersey report of conviction inadmissible if

---

**13.** Contrary to the assertions in the concurring and dissenting opinion, this is completely consistent with our holding in *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 696 A.2d 148 (1997). In *Oberneder*, we considered the issue of whether an award of attorneys' fees is mandatory or discretionary when an employee prevails on a claim for wages under the Wage Payment and Collection Law, 43 P.S. §§ 260.1–260.12. In holding that a court must award attorneys' fees to a prevailing employee in an action under the Wage Payment and Collection Law, we explained that the law unambiguously states that the "court . . . shall, in addition to any judgment awarded to the plaintiff, allow costs for reasonable attorneys' fees . . . ." *Oberneder*, 548 Pa. at 205–06, 696 A.2d at 150–51 (citing 43 P.S. § 260.9a(f)). We recognized that "shall" is mandatory for purposes of statutory construction when a statute is unambiguous. *Id.* at 205, 696 A.2d at 150 (citing *Coretsky v. Board of Commissioners*, 520 Pa. 513, 518, 555 A.2d 72, 74 (1989)).

Similarly, in this case, the language of Article III mandates action by a party state reporting a conviction. There is nothing in the unambiguous language of Article III to indicate that the technical deficiencies in the out-of-state conviction reports somehow preclude the license suspensions at issue in this case. Thus, our holding today is in harmony with *Oberneder*.

defective, a fact that appellee acknowledges elsewhere in his brief. Appellee's Brief at 12; *see also* 75 Pa.C.S. § 6501 (certified records of conviction from any Federal or state court and certified records of administrative adjudication from any state admissible without further documentation); 75 Pa.C.S. § 1550(d) (documents that PennDOT certified were received by means of electronic transmission from other jurisdictions are admissible and constitute *prima facie* proof of the facts contained in the electronic transmission). Thus, we fail to see how the technical, immaterial defects in the report here rendered PennDOT's suspension of appellee's license errone-ous.[14]

In sum, under the Compact, PennDOT properly suspended the licenses of appellees in this matter. The trial court erred by concluding that the provisions of the Compact, as enacted in 75 Pa.C.S. §§ 1581–1585, violated principles of double jeopardy, equal protection and due process under the United States and Pennsylvania Constitutions. Furthermore, the additional challenges by the licensees as to the application of the Compact are meritless. Accordingly, the order of the Court of Common Pleas is reversed and the one-year suspensions of the operating privileges of appellees that were imposed by PennDOT in compliance with its statutory mandate are reinstated. The case is remanded to the trial court to address the issue of whether N.J.S. § 39:4–50(a) is substantially similar to 75 Pa.C.S. § 3731 for purposes of Article IV(c) of the Compact. Jurisdiction is relinquished.

Justice CAPPY files a concurring and dissenting opinion in which Chief Justice FLAHERTY and Justice ZAPPALA join.

**14.** On December 21, 1998, the General Assembly amended 75 Pa.C.S. § 1584, governing the furnishing of conviction information *to* other states, to provide that "[t]he omission from any report received by the department from a party state of any information required by Article III of the compact shall not exclude the department from complying with its duties under Articles IV and V of the compact." As this amendment was not enacted until after appellees' convictions, it is not applicable to their cases. Nonetheless, it is significant as it explicitly recognizes what is implicit in the structure of the Compact: states play different roles depending on whether they are the home states or the convicting states. The focus in the case *sub judice* is the home state.

CAPPY, Justice, concurring and dissenting.

I concur in the result reached in the disposition of this case with regard to one appellee, Douglas C. Byer, for reasons stated herein. However, I respectfully dissent with regard to the remainder of appellees, since I am unable to accept the majority's analysis of Article III, which ignores the rules of statutory construction.

Initially, I must point out that I am perplexed by the majority's conclusion that this issue was waived since appellee failed to present it in the Statement of Questions Involved. Slip opinion at 13–14. PennDOT, as appellant, raised this issue in its Statement of the Questions Involved and discussed it at length in its brief to this court. Appellant's Brief at 3, 37–40. PennDOT does not allege that the trial court acted improperly in reviewing this issue or that appellee failed to preserve this issue for our review, but rather addresses the merits of this issue. Thus, at the very least, PennDOT waived any argument that appellee's failure to raise the issue to this court did not preserve it. For these reasons, I simply cannot see how this issue is waived. Thus, I believe that our court can properly review it.

The majority approves PennDOT's lack of compliance with Article III on the basis that the details omitted from the report would not have shed light on the conduct underlying appellee's conviction. However, this conclusion ignores the fact that the requirements of Article III are mandatory. Based upon the rules of statutory construction, I would conclude that before PennDOT can suspend a license based on an out-of-state conviction report pursuant to Article IV, it must ensure that the report, which provides the foundation for the suspension, complies with the requirements of Article III.

Article IV of the Compact gives PennDOT the power to revoke, suspend, or limit the license to operate a motor vehicle on the basis of an out-of-state conviction that is reported pursuant to Article III. 75 Pa.C.S. § 1581. Article III of the Compact sets forth certain information that a conviction re-

port submitted to PennDOT by the party state "shall" contain. The Compact provides, in pertinent part, as follows:

> Such report shall clearly identify the person convicted, describe the violation specifying the section of the statute, code or ordinance violated, identify the court in which action was taken, indicate whether a plea of guilty or not guilty was entered or the conviction was a result of the forfeiture of bail, bond or other security and shall include any special findings made in connection therewith.

*Id.* Thus, when Article III and Article IV are read together, it is clear that PennDOT is revoking, suspending or limiting the operating licenses on the basis of the out-of-state reports that are submitted to PennDOT pursuant to Article III.

Appellee asserts that the requirements of Article III must be strictly followed because of the detrimental consequence, i.e., the suspension of a driver's license, that the out-of-state conviction reports have on a Pennsylvania operator.[1] Conversely, PennDOT acknowledges that the reports submitted to it by the party states do not comply with Article III of the Compact, but argues that, for purposes of Article III, "shall" should be construed as directory instead of mandatory, and thus, the subsequent license suspensions based on the incomplete conviction reports were proper.[2] Thus, this issue is distilled to whether "shall" for purposes of Article III is mandatory or directory.

Contrary to the urgings of PennDOT and the conclusion of the majority opinion, I cannot agree that "shall" is intended to be merely directory in the instant case. The rules of statutory construction provide that the plain meaning of statutes are not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.A. § 1921(b). Recently, this court has stated that

---

1. As noted by the majority, only one appellee, Steven Hirsh, filed a brief in this matter.

2. In addressing the requirements of Article III, the trial court intimated that the requirements of Article III applied to the certified documents that were submitted to the court by PennDOT, rather than focusing on the conviction reports submitted to PennDOT by the party states. This analysis was incorrect, since Article III clearly applies to the reports submitted by the party states to PennDOT.

"by definition 'shall' is mandatory" for purposes of statutory construction. *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 696 A.2d 148, 151 (1997).[3] Accordingly, "shall" should be construed as mandatory for purposes of Article III of the Compact and the reporting requirements of Article III must be strictly complied with in order to suspend a license pursuant to the Compact. In the instant case, the requirements of Article III were not met, and therefore, the incomplete conviction reports that were submitted to PennDOT by the party states cannot serve as a basis for a license suspension under Article IV of the Compact.[4]

I similarly reject the majority's suggestion that PennDOT must only comply with the requirements of Article III when PennDOT is reporting the conduct to other states. Slip opinion at 16. Once more, the majority seems to be examining the intent of the legislature rather than the plain language of the statute. Article III does not direct that only the home state must comply with the requirements. Indeed, that section begins by enumerating what the "licensing authority of a **party state**" must report. (Emphasis added). If the legislature intended that this requirement would only apply to PennDOT's reports submitted to party states, it could have clarified this intent by changing "party state" to "home state." While I am fully cognizant of the fact that PennDOT does not control the information contained in the conviction reports submitted to it by a party state, PennDOT is clearly the entity in a better position than either licensees or courts to ensure that the information submitted by the party state is complete.

**3.** I recognize that this author has remarked that although "shall" is generally regarded as mandatory, in some circumstances it has also been interpreted "to mean 'may' or as being merely directory." *Oberneder*, 696 A.2d at 151 (Cappy, J. concurring)(disagreeing with majority's conclusion that "shall" should always be construed as mandatory); *Baker*, 690 A.2d at 167 ("shall" may be interpreted as either mandatory or merely directory). However, I recognize that the rule stated in *Oberneder* is stare decisis in this jurisdiction, and therefore, must be followed.

**4.** I am constrained to join the majority opinion's result with regard to appellee, Douglas C. Byer, since the conviction report submitted to PennDOT by Florida's licensing authority fully complied with the requirements of Article III.

I also disagree with the majority's intimation that the legislative attempt to amend the requirements of Article III by amending 75 Pa.C.S. § 1584 supports its conclusion, since it is unclear whether this amendment can overrule the mandatory requirements of Article III. Rather, at this time, it is most prudent to limit our review to the plain meaning of the statute. Accordingly, except as noted herein, I would affirm the decision of the lower court.

Chief Justice FLAHERTY and Justice ZAPPALA join this concurring and dissenting opinion.