David M. **THOREK**, Appellant

v.

**COMMONWEALTH** of Pennsylvania, **DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 7, 2007.

Decided Dec. 4, 2007.

Jack W. Cline, Mercer, for appellant.

Terrance M. Edwards, Asst. Counsel and Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for appellee.

BEFORE: McGINLEY, Judge, PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

David M. Thorek (Licensee) appeals an order of the Court of Common Pleas of Luzerne County (trial court) dismissing his statutory appeal of a one-year disqualification of his commercial vehicle operating privileges pursuant to Section 1611(a)(1) of the Vehicle Code, also known as the Uniform Commercial Driver's License Act. The disqualification resulted from Licensee's conviction for driving under the influence of alcohol while operating an automobile. Licensee contends that the statute governing the disqualification of his commercial operator's license was misapplied or, alternatively, is unconstitutional.

The facts are not in dispute. On April 29, 2006, Licensee was charged with driv-

ing his automobile under the influence (DUI), in violation of Section 3802 of the Vehicle Code, 75 Pa.C.S. 3802. Licensee applied for Accelerated Rehabilitative Disposition (ARD), and it was granted by the Luzerne County District Attorney's Office. On August 9, 2006, Licensee was placed in the ARD program. The Department of Transportation, Bureau of Driver Licensing (Department) then notified Licensee that (1) his driver's license would be suspended for 60 days and (2) he would be disqualified from operating a commercial vehicle for one year.

Licensee appealed, asserting that the Department did not have the authority to disqualify him from operating a commercial vehicle because an ARD was not a "conviction" under the Vehicle Code. Licensee argued that Section 1611(a) of the Vehicle Code, which defines a "conviction" as acceptance into ARD, is an unconstitutional intrusion on the prerogative of the Supreme Court to handle criminal prosecutions. Finally, he asserted that Section 1611(a) violates equal protection by treating those licensed to operate commercial vehicles differently than those licensed to operate private passenger motor vehicles. The trial court denied his appeal, and Licensee appealed to this Court, presenting the same issues.[1]

Licensee's first issue relates to the proper interpretation of Chapter 16 of the Vehicle Code, a task in which we are guided by the Statutory Construction Act of 1972, 1 Pa.C.S. 1501–1991. It directs that "the object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly." *Walker v. Eleby,* 577 Pa. 104, 123, 842 A.2d 389, 400 (2004) (citing 1 Pa.C.S.1903(a), 1921(b)). The clearest in-

dication of legislative intent is generally the plain language of a statute. *Id.*

With these principles in mind, we turn to Section 1611(a)(1) of the Vehicle Code. It provides that a person convicted of DUI will be disqualified from driving a commercial vehicle for one year. It states:

(a) *Disqualification for first violation of certain offenses.*-Upon receipt of a report of conviction, *the department shall, in addition to any other penalties imposed under this title, disqualify any person from driving a commercial motor vehicle* or school vehicle for a period of one year for the first violation of:

(1) section 3802 (relating to driving under influence of alcohol or controlled substance) or former section 3731, where the person was a commercial driver at the time the violation occurred[.]

75 Pa.C.S. 1611(a) (emphasis added). A "conviction" includes, *inter alia,* acceptance into ARD. The Vehicle Code states:

For the purposes of [Chapter 16], a conviction includes a finding of guilty or the entering of a plea of guilty, nolo contendere or the unvacated forfeiture of bail or collateral deposited to secure a person's appearance in court as determined by the law of the jurisdiction in which the prosecution was held. A payment of the fine for the violation by any person charged with a violation of this title is a plea of guilty. *The term shall include the acceptance of Accelerated Rehabilitative Disposition* or other preadjudication disposition for an offense or an unvacated finding of guilt or determination of violation of the law or failure to com-

---

1. Licensee raises an interpretation of statute and a facial challenge to the constitutionality of that statute. In such cases, our scope of review is plenary. *Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167 (1995).

ply with the law by an authorized administrative tribunal. The term does not include a conviction which has been overturned or for which an individual has been pardoned.

75 Pa.C.S. 1603 (emphasis added). Thus, Chapter 16 of the Vehicle Code expressly authorized the Department to disqualify Licensee from operating a commercial motor vehicle for a period of one year when he was accepted into "Accelerated Rehabilitative Disposition" for his first time DUI offense.

However, Licensee argues that Section 6501 of the Vehicle Code, which provides a general definition of "conviction" for purposes of the Vehicle Code, not Chapter 16, should be followed here. Section 6501 does not include ARD within the definition of "conviction."[2] Further, the DL–21A Form entered into evidence by the Department is not a "certified" copy of a conviction; under Section 6501 nothing less than a certified copy of a conviction will suffice. Because the Department's suspension of Licensee's commercial driver's license did not follow the terms of Section 6501, Licensee argues that the suspension was invalid.

We agree with Licensee that Chapter 16 conflicts with other chapters in the Vehicle Code. The definition of "conviction" in Chapter 16 includes an acceptance into ARD, but the definition of a "conviction" in

Section 6501 of the Vehicle Code, 75 Pa. C.S. 6501, is more limited. Section 6501 does not include ARD within the ambit of a "conviction." In addition, in a Chapter 16 disqualification of a commercial drivers license, the Department needs only to produce a "receipt of a report of conviction." 75 Pa.C.S. 1611(a). The Department does not need to possess a "certified record of conviction" before suspending a commercial operator's license, as is required under 75 Pa.C.S. 6501(c) for the suspension of a non-commercial operator's license.[3]

These differences were intended by the legislature. Indeed, it has directed that where there is a conflict between Chapter 16 and other provisions in the Vehicle Code, Chapter 16 prevails. The Vehicle Code states as follows:

[Chapter 16] is a remedial law and shall be liberally construed to promote the public health, safety and welfare. *To the extent that this chapter conflicts with other driver licensing provisions, this chapter prevails.* Where this chapter is silent, the general driver licensing provisions apply.

75 Pa C.S. § 1602(b) (emphasis added). The present controversy is governed by Chapter 16 of the Motor Vehicle Code, and Licensee's attempt to rely on other provisions of the Vehicle Code violates 75 Pa. C.S.1602(b).

---

**2.** Section 6501 of the Vehicle Code provides:

(a) General rule.—For the purposes of this title a conviction includes a plea of guilty, a plea of nolo contendere, a finding of guilty by a court or unvacated forfeiture of bail or collateral deposited to secure a defendant's appearance in court.

(b) Payment of fine as guilty plea.—A payment by any person charged with a violation of this title of the fine prescribed for the violation is a plea of guilty.

(c) Certified record of convictions.—For the purpose of this title, a certified record of conviction includes a certified record of

conviction from any Federal or state court and a certified record of administrative adjudication from any state. These records or copies of these records shall be admissible in any court of law without any need for further documentation.

75 Pa.C.S. 6501.

**3.** Section 1611(a) previously required a certified copy of a conviction, but it was substantially rewritten in the Act of July 5, 2007, P.L. 100, to eliminate the requirement of a certified record of conviction.

■ Next, Licensee challenges the authority of the General Assembly to define a "conviction" to include ARD. He contends that the "Legislature has no more power or ability to re-define the concept of a criminal conviction than it would to re-define the term 'property' so that it did not include the term real estate." Licensee's Brief at 8. He asserts that our Supreme Court has exclusive authority to define a conviction, relying on the principle that the Supreme Court's "power to establish rules of procedure for state courts is exclusive." *Payne v. Department of Corrections*, 582 Pa. 375, 384, 871 A.2d 795, 801 (2005). The Rules of Criminal Procedure promulgated by the Supreme Court govern ARD, and Licensee contends that the legislature cannot meddle therein. Stated otherwise, he views Chapter 16 as an infringement on the judicial prerogative to provide a rehabilitative, instead of a penal, means of handling first time DUI offenders.

There is a fundamental problem with Licensee's argument. His acceptance of ARD resolved his criminal charges, but it did not resolve the collateral civil proceeding by which his commercial vehicle operating privileges have been suspended.

The licensing of vehicle operators is civil in nature and is separate and apart from criminal DUI proceedings. *Commonwealth v. Wolf*, 534 Pa. 283, 291, 632 A.2d 864, 867 (1993).[4] By defining acceptance into an ARD program as a "conviction" for purposes of determining eligibility for a commercial operator's license, the legislature has in no way infringed upon the Supreme Court's prerogative to regulate the business of the courts.

■ Finally, Licensee argues that the one year suspension of his commercial driver's license, as opposed to the sixty-day suspension meted to non-commercial licensees accepted into ARD for a first-time DUI conviction,[5] violates his constitutional right to equal protection under the law as guaranteed by the United States and Pennsylvania Constitutions.[6] Licensee points out to the Court that the loss of his commercial drivers license will adversely affect his livelihood. He argues that "[t]he right to lawful employment, while not a fundamental right, is 'undeniably important' and cannot be arbitrarily interfered with." Licensee's Brief at 11.

---

4. Courts of this Commonwealth have consistently recognized that a license suspension is a collateral civil consequence of a criminal conviction. *See, e.g., Department of Transportation v. McCafferty*, 563 Pa. 146, 159, 758 A.2d 1155, 1162 (2000) (mandatory license suspension imposed pursuant to the Driver's License Compact, 75 Pa.C.S. §§ 1581–1585, constitutes a collateral civil consequence of the out-of-state conviction.); *Commonwealth v. Duffey*, 536 Pa. 436, 440, 639 A.2d 1174, 1176 (1994) (the loss of driving privileges is a civil collateral consequence of a conviction for underage drinking); *Commonwealth v. Englert*, 311 Pa.Super. 78, 457 A.2d 121 (1983) (suspension imposed following a conviction for failing to stop at the scene of an accident constitutes a civil collateral consequence).

5. Notably, a first time DUI *conviction* does not result in a license suspension. 75 Pa.C.S.

§ 3804. By contrast, acceptance into ARD for a first time DUI conviction results in a 60–day suspension. 75 Pa.C.S. § 3807(d). An individual convicted of a first-time DUI must choose between a clean criminal history by entering ARD, at the cost of a 60–day loss of driving privileges, or leaving the DUI criminal conviction in place and continuing to drive without any suspension.

6. Our Supreme Court treats equal protection claims under the Fourteenth Amendment of the United States Constitution the same as equal protection claims brought under Article I, Section 26 and Article III, Section 32 of the Pennsylvania Constitution. *Probst v. Department of Transportation, Bureau of Driver Licensing*, 578 Pa. 42, 56, 849 A.2d 1135, 1143 (2004).

Thorek's burden is a heavy one. He must show that the Vehicle Code "clearly, palpably and plainly" violates his constitutional right to equal protection under the law. *Commonwealth v. Sutley*, 474 Pa. 256, 260–61, 378 A.2d 780, 782 (1977). The essentials of equal protection under the United States and Pennsylvania Constitutions have been explained by our Supreme Court as follows:

> The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However, it does not require that all persons under all circumstances enjoy identical protection under the law. The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, and does not require equal treatment of people having different needs. The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation. In other words, a classification must rest upon some ground of difference which justifies the classification and have a fair and substantial relationship to the object of the legislation.

*Curtis v. Kline*, 542 Pa. 249, 254–255, 666 A.2d 265, 267–268 (1995) (emphasis added). *Id.* at 254–255, 666 A.2d at 267–268 (citations omitted). Here, there is no claim that there is different treatment among commercial vehicle licensees. Rather, the question is whether the legislature's classification of vehicle operators as "commercial" or "non-commercial" for purposes of licensing and regulation can withstand equal protection scrutiny.

 The degree of scrutiny is determined by the type of interest affected by the statutory classification, and classifications relating to the driving privilege and the right to engage in a lawful occupation are to be analyzed under the rational basis test.[7] *Plowman v. Department of Transportation, Bureau of Driver Licensing*, 535 Pa. 314, 319, 635 A.2d 124, 126 (1993). As explained by our Supreme Court, the rational basis test requires a two-step analysis:

> First, we determine whether the challenged statute seeks to promote any legitimate state interest or public value; and if so, we then determine whether the legislative classification is reasonably related to accomplishing that articulated state interest.

*Kramer v. Workers' Compensation Appeal Board (Rite Aid Corp.)*, 584 Pa. 309, 335, 883 A.2d 518, 534 (2005). Under this deferential standard, the classification need only be directed at the accomplishment of a legitimate governmental interest in a manner that is not arbitrary or unreasonable. *Id.* at 336, 883 A.2d at 534.[8] A classification does not violate equal protection if any state of facts can be conceived to sustain the classification; indeed, courts are "free to hypothesize reasons why the legislature created the particular classifica-

---

**7.** The types of classifications are: (1) classifications which implicate a "suspect" class or a fundamental right; (2) classifications implicating an "important" though not fundamental right or a "sensitive" classification; and (3) classifications which involve none of these. *Probst*, 578 Pa. at 56, 849 A.2d at 1143–1144.

**8.** A statute bears a presumption of constitutionality and under a rational basis challenge, the party asserting the unconstitutionality of a statute bears a heavy burden to prove that the statute violates the constitution. *Department of Transportation v. McCafferty*, 563 Pa. 146, 155, 758 A.2d 1155, 1160 (2000).

tion at issue....." *Kramer*, 584 Pa. at 336, 883 A.2d at 534.

We turn, then, to the classification system embodied in Chapter 16, which treats the operators of commercial vehicles differently from the operators of private passenger motor vehicles when they enter ARD for a first-time DUI offense. The stated legislative goal of Chapter 16 of the Vehicle Code, is as follows:

(a) Purpose.—*The purpose of this chapter is to* implement the Commercial Motor Vehicle Safety Act of 1986 (public Law 99–570, 49 U.S.C. app. 2701 et seq.) and *reduce or prevent commercial motor vehicle accidents, fatalities and injuries* by:

(1) Permitting commercial drivers to hold only one driver's license.

(2) Disqualifying commercial drivers who have committed certain serious traffic violations or other specified offenses.

(3) Strengthening licensing and testing standards.

75 Pa.C.S. 1602 (emphasis added).[9] In sum, the General Assembly identified two goals to be served by Chapter 16: to implement Pennsylvania's participation in the federal program[10] and to "reduce or prevent commercial motor vehicle accidents." 75 Pa.C.S. 1602.

The General Assembly's statement of purpose does not specifically address the question of why operators of commercial vehicles should be treated differently from operators of non-commercial vehicles,[11] with respect to a first time DUI conviction. We are free to hypothesize the reason for this classification and, indeed, this Court provided the reason over thirty years ago.

This Court has specifically held that it is reasonable to subject the operators of commercial vehicles to stricter sanctions than those imposed upon operators of other vehicles. In *Department of Transportation, Bureau of Traffic Safety v. Huff*, 10 Pa.Cmwlth. 261, 310 A.2d 435, 436 (1973), this Court considered an equal protection challenge to the point system in the Vehicle Code. The licensee asserted that there

9. Congress enacted the Commercial Motor Vehicle Safety Act of 1986 to improve the safety of commercial vehicle operation. It did so, *inter alia*, by establishing minimum licensing standards; imposing responsibilities upon employers; forbidding an individual from being licensed as a commercial driver by more than one state; and establishing a "commercial driver's license information system." 49 U.S.C. 2706. The Act provided grants to states to assist in the cost of the state's participation in these endeavors, 49 U.S.C. 2704(a), and it authorized the United States Secretary of Transportation to withhold federal highway funds from states that refused to enact standards that met federal criteria for licensing and sanctioning operators of commercial vehicles. 49 U.S.C. 2710.

10. The federal regulation states that a "[commercial driver's license] holder must be dis-

qualified from operating a [commercial motor vehicle] for 1 year ..." for a "first time conviction ... of being under the influence of alcohol prescribed by State law," even while "operating a non-[commercial motor vehicle]." 49 C.F.R. 383.51 (table).

11. The Commercial Motor Vehicle Safety Act of 1986 was silent on how states should regulate the conduct of those licensed to operate non-commercial vehicles. States could have extended the federal standards, particularly those relating to sanctioning DUI offenders, to operators of non-commercial vehicles. In that case there would be no classification of operators. Pennsylvania chose not to, deciding, apparently, that there are sound policy reasons to distinguish between the regulation of commercial vehicle operators and the operators of different types of vehicles.

was no rational reason to impose more points on operators of commercial vehicles than upon operators of private passenger vehicles for the same violations of the Vehicle Code. We rejected the argument. We explained that much greater harm to person and property can be done by a commercial vehicle and, therefore, it was not arbitrary to subject commercial vehicle licensees to harsher sanctions than are imposed upon those licensed to operate automobiles.

The logic of *Huff* applies here. The legislature cannot be said to have acted in an arbitrary and capricious manner when it decided that licensees should be disqualified from operating commercial vehicles for one year for a first time DUI offense even where the offense is resolved by ARD, but that operators of non-commercial vehicles who are accepted into ARD for a DUI offense should be suspended for only sixty days. The greater harm that can be caused by commercial vehicles justifies the imposition of harsher sanctions, including subjecting a commercial vehicle licensee to harsher sanctions the first time that he drives any vehicle under the influence of alcohol. It is not unreasonable for a legislative body also to suppose that a person who operates any automobile under the influence of alcohol is at greater risk to repeat this conduct in a commercial vehicle, which is capable of horrific destruction on Pennsylvania's highways. Chapter 16 advances a public interest, *i.e.,* reduction of commercial vehicle accidents, and it is not for judges to second guess this judgment of the legislature on how to achieve this goal when it is not obviously arbitrary.

For these reasons, we affirm.

### ORDER

AND NOW, this 4th day of December, 2007, the order of the Court of Common Pleas of Luzerne County dated January 11, 2007, in the above captioned matter is hereby AFFIRMED.