**1–A REALTY, Petitioner**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 7, 2012.

Decided Jan. 4, 2013.

Mark Malkames, Allentown, for petitioner.

Kenneth R. Stark, Assistant Counsel, Harrisburg, for respondent.

Andrew H. Ralston, Jr., Allentown, for intervenor PPL Electric Utility Corporation.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

Petitioner 1–A Realty (Owner) appeals from the Pennsylvania Public Utility Commission's (PUC) April 12, 2012 order adopting the Administrative Law Judge's (ALJ) initial decision dismissing Owner's complaint and ordering PPL Electric Utilities Corporation (PPL) to transfer tenant electric accounts to Owner's name. The issues for this Court's review are: (1) whether Section 1529.1 of the Public Utility Code (Code), 66 Pa.C.S. § 1529.1,[1] permits tenants to accept utility service for communal street lights which are not part of their normal home usage; (2) whether the PUC properly concluded that PPL could not convert the transferred Owner's account back to the tenants' names; and, (3) whether the PUC properly ordered PPL to transfer the accounts of tenants not involved in this dispute to Owner's name. We affirm.

The facts of this case are not in dispute. Petitioner owns and operates Red Maple Acres (Red Maple), a community in Lower Macungie Township, Wescosville, wherein residents lease their lots and place their manufactured homes on site, commonly referred to as a mobile home park. When Red Maple was developed in the 1960s, wiring for its 21 street lights was placed underground in unmarked locations on a single circuit connected to Red Maple's central maintenance garage, and not in conduit. After an incident in which a tenant inadvertently dug up and cut street light wiring, a recurring problem, Owner determined there was a safety issue. Therefore, Owner decided to wire the communal street lights to the electric boxes of the homes of the nearest tenants.

Owner notified tenants of the proposed rewiring, including Phyllis and Herbert Ruth (Ruth) and Karen Thompson (Thompson). Owner rewired the street lights in July 2009. Each home connected to a street light was provided a switch in

---

1. Also referred to as Act 54.

its breaker box associated with the light. Tenants were aware that the conversion was taking place. Based upon metered usage measured at the maintenance building and two vacant lots, Owner determined that the average electric bill for street light usage ranged from $6.54 to $9.67 per month. Accordingly, Owner gave tenants to whose property the street lights were wired a $10.00 monthly rental discount to compensate them for the additional electric expense.[2]

In August 2009, tenants Ruth and Thompson called PPL to determine whether the $10.00 was sufficient to compensate them for the street light usage. Neither of them wanted an investigation to proceed, nor did they ask that their electric usage account be placed in Owner's name. Nevertheless, by letters dated August 21 and August 26, 2009, respectively, PPL notified Owner that the Ruth and Thompson accounts, along with the outstanding balances, had been transferred to Owner's name due to the fact that their homes were "not individually metered." In other words, their electric meters were registering usage which was not exclusive to their homes, commonly referred to as accepting a "foreign load." Owner responded that the claimed loads had been disconnected from the Ruth and Thompson breaker boxes, and instructed PPL to transfer the accounts back to Ruth and Thompson. Although PPL confirmed that there was no foreign load going to the Ruth or Thompson meters, PPL refused to change the accounts back. PPL also refused Ruth's and Thompson's requests to have the electric accounts placed back in their names.

■ On March 24, 2010, Owner filed complaints with the PUC against PPL pertaining to the Ruth account (No. F–2010–2166554) and the Thompson account (No. F–2010–2166976) based upon PPL's above-described conduct. The ALJ consolidated the complaints. PPL filed an answer and new matter, and Owner filed a reply to PPL's new matter. Hearings were held before the ALJ on April 26, 2011 and August 23, 2011. On December 20, 2011, the ALJ issued an initial decision dismissing the complaints and directing PPL to transfer the accounts for each of the 21 Red Maples' residents[3] with street lights attached to their residential electric boxes into Owner's name until such time as Owner permanently, completely, and safely corrects the foreign load in conformity with his decision. Owner filed exceptions to the ALJ's initial decision, and PPL filed a reply to the exceptions. By April 12, 2012 opinion and order, the PUC denied Owner's exceptions, adopted the ALJ's initial decision and dismissed Owner's complaints. Owner appealed to this Court.[4] On October 15, 2012, PPL was granted leave to intervene.

Owner first argues that the PUC erred by finding that tenants are not permitted to accept utility service for communal street lights which are not part of their normal home usage. Specifically, Owner contends that Section 1529.1(b) of the

---

**2.** Ruth and Thompson signed documents reflecting that they were aware of Red Maple's "Rules Regulations Reminders & Updates" which included a statement therein regarding the $10.00 discount. Reproduced Record at 203a–205a.

**3.** William A. Mayo, Red Maple's manager, testified at the ALJ hearing that the breakers for the other 19 tenants' street lights were not turned off. Those street lights were still turned on and still working. Reproduced Record at 110a.

**4.** "Appellate review of a PUC order is limited to determining whether a constitutional violation, an error of law, or a violation of PUC procedure has occurred and whether necessary findings of fact are supported by substantial evidence." *Popowsky v. Pa. Pub. Util. Comm'n*, 589 Pa. 605, 622, 910 A.2d 38, 48 (2006).

Code, 66 Pa.C.S. § 1529.1(b), permits a utility customer to accept a foreign load, and that prior PUC policy pronouncements support its position. We disagree.

This Court has held that

> the PUC's interpretations of the Code, the statute for which it has enforcement responsibility, and its own regulations are entitled to great deference and should not be reversed unless clearly erroneous. When reviewing a PUC decision, the Court should neither 'substitute its judgment for that of the PUC when substantial evidence supports the PUC's decision on a matter within the commission's expertise,' nor should it indulge in the process of weighing evidence and resolving conflicting testimony.

*Energy Conservation Council of Pa. v. Pub. Util. Comm'n*, 995 A.2d 465, 478 (Pa. Cmwlth.2010) (citation omitted).

At issue here is Section 1529.1(b) of the Code, which provides:

> **[I]f the mobile home park ... contains one or more dwelling units not individually metered, an affected public utility shall forthwith list the account for the premises in question in the name of the owner,** and the owner shall thereafter be responsible for the payment for the utility services rendered thereunto. In the case of individually metered dwelling units, unless notified to the contrary by the tenant or an authorized representative, an affected public utility shall list the account for the premises in question in the name of the owner, and the owner shall be responsible for the payment for utility services to the premises.

66 Pa.C.S. § 1529.1(b) (emphasis added). However, the phrase "not individually metered" is not defined in the Code or the PUC's regulations. Notwithstanding, the PUC has defined the phrase in its decisions. In *Shank v. PPL Electric Utilities, Inc.*, Docket No. C–2009–2087300, 2009 WL 2857940 (Pa.P.U.C.2009), the PUC held that the phrase, "not individually metered" as used in Section 1529.1 of the Code means that the unit's electric meter is registering foreign wiring. In other words, "the existence of foreign wiring precludes a premises from being considered 'individually metered' for purposes of [Section 1529.1 of the Code]." *Franckowiak v. PPL Elec. Utils. Corp.*, Docket No. C–2005–4687, 2006 WL 4794383 (Pa.P.U.C. 2006).[5]

■ Since the enactment of Section 1529.1 of the Code, the PUC has consistently defined "not individually metered," as "the utility meter for the unit is registering a foreign load, or usage not exclusive to the dwelling unit or its occupants." *Del Vecchio v. PPL Elec. Utils. Corp.*, Docket No. Z–01464793, 2005 WL 2277638 (Pa.P.U.C.2005); *see also Cosme v. PECO Energy Co.*, Docket No. C–2010–2171497, 2012 WL 1794917 (Pa.P.U.C.2012); *Albright v. UGI Penn Natural Gas Co., Inc.*, Docket No. F–2009–2139408 (Pa. PUC 2012). Affording deference to the PUC's interpretation of the Code, as we must, we conclude that the PUC properly determined that "not individually metered" means the utility meter for the unit has attached to it foreign wiring or is registering usage not exclusive to the dwelling unit or its occupants.

■ Based upon the above conclusion, we must review Section 1529.1(b) of the Code to determine whether it permits ten-

---

**5.** In this case, a PPL representative entered the dwelling to conduct a foreign wiring inspection by turning the breaker switches off in one apartment and checking the appliances in the second apartment to determine the existence of a foreign load.

ants to accept utility service which is not exclusive to their homes. Section 1529.1(b) of the Code specifically states: "if the mobile home park ... contains one or more dwelling units **not individually metered,** an **affected public utility shall** forthwith **list the account** for the premises in question **in the name of the owner** ...." (Emphasis added). It is well established that " 'shall' is mandatory for purposes of statutory construction when a statute is unambiguous." *Dep't of Transp. v. McCafferty,* 563 Pa. 146, 163, 758 A.2d 1155, 1164 (2000). Thus, tenants are not permitted to accept utility service which is not exclusive to their homes. Accordingly, the PUC properly determined that it was obligated under the Code to list the Ruth and Thompson accounts in Owner's name.[6]

■ Owner next argues that the PUC erred by expanding its jurisdiction from statutory compliance to supervision of customer wiring. Specifically, Owner contends that notwithstanding that the tenants never requested their accounts be transferred to the Owner's name and Owner immediately disconnected the street lights from the tenants' breakers, PPL improperly refused to convert the accounts back to Ruth and Thompson's names. We disagree.

The Code does not permit the requested conversion based on either tenant agreement or breakers being switched off. In *Franckowiak,* the PUC clearly determined that "the existence of foreign wiring precludes a premises from being considered 'individually metered.' " *Id.* When asked at the ALJ hearing if the wiring was disconnected, William A. Mayo (Mayo), Red Maple's manager, testified: "No, we didn't disconnect the wiring. We turned the power off by way of turning off the breaker." Reproduced Record at 116a. Notwithstanding the fact that the electric meter is no longer registering a foreign load, Section 1529.1(b) of the Code mandates that dwelling units not individually metered *shall* be listed in the owner's name and *shall* be the owner's responsibility. Thus, because the Ruth and Thompson electric boxes contain foreign wiring, the PUC is prohibited from reverting the Ruth and Thompson accounts back to their names. Accordingly, the PUC did not improperly expand its jurisdiction and ruled in accordance with its statutory authority.

■ Owner finally argues that the PUC improperly exercised jurisdiction over claimed foreign loads not involved in Owner's dispute. Specifically, Owner contends that the PUC erred by directing PPL to change the accounts of the other 19 tenants whose homes were wired to the street lights to the Owner's account even though those actions were not raised in the com-

---

6. Owner's contention that the PUC's prior *proposed* policy pronouncements suggesting that a *de minimis* foreign load may be acceptable somehow binds the PUC to that interpretation is without merit. As the PUC stated in its opinion:

We note that the [*Proposed Policy Statement Re: Resolution of Issues Common to Complaints Involving 66 Pa.C.S. § 1529.1 (relating to duty of owners of rental property),* Docket No. L00980137 (Order entered September 23, 1998), 28 *Pa. B.* 5497 (October 31, 1998) (*1998 Proposed Policy Statement* )] and [*Proposed Rulemaking Order Re: Residential Accounts Containing*

*Charges for Foreign Load,* Docket No. L-00990142 (Order entered August 13, 1999)(*1999 Proposed Rulemaking* )] both proposed a *de minimus* [sic] load exception to Act 54. However, ... neither the *1998 Proposed Policy Statement* nor the *1999 Proposed Rulemaking* was finalized, and both were discontinued. Turning to the [PUC]'s decisions on this issue, the [PUC] clearly has determined that there is no such exception under Act 54.... PUC Op. at 21. We agree that the *proposed* rulemaking that the PUC did not adopt, and in fact rejected, is not binding on the PUC.

plaint, and those tenants were not involved in these proceedings. We disagree.

Section 1529.1(a) of the Code, 66 Pa.C.S. § 1529.1(a), states:

> It is the duty of every owner of a residential building or mobile home park which contains one or more dwelling units, not individually metered, to notify each public utility from whom utility service is received of their ownership and the fact that the premises served are used for rental purposes.

Moreover, according to Section 1529.1(c) of the Code, 66 Pa.C.S. § 1529.1(c), "[a]ny owner of a residential building or mobile home park failing to notify affected public utilities as required by this section **shall** nonetheless be responsible for payment of the utility services as if the required notice had been given." (Emphasis added). Thus, notwithstanding whether Owner or any other person notified PPL of the foreign load, once PPL was aware of the situation, it was required to convert the accounts to Owner's name. Accordingly, the PUC properly exercised its jurisdiction over the foreign loads not specified in the complaint.

Based upon the foregoing, we affirm the PUC's order.

### ORDER

AND NOW, this 4th day of January, 2013, the Pennsylvania Public Utility Commission's April 12, 2012 order is affirmed.